(September 11, 2012)

■ Philip Capuano et al., Respondents, v Tishman Construction Corporation et al., Appellants. [950 NYS2d 517]—

Order, Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered September 19, 2011, which granted

plaintiffs' motion for partial summary judgment on the issue of liability on the Labor Law § 241 (6) cause of action, affirmed, without costs.

Plaintiff Philip Capuano, a member of the Empire State's Carpenter's Union, Local 7, was employed by nonparty Donaldson Acoustics from 1998 until 2007. Defendant Yeshiva University, owner of the premises, retained defendant Tishman Construction Corporation pursuant to a construction management agreement for a project known as the "Block Research Pavilion." Plaintiff's employer was retained for carpentry work to be done on the site, as well as for the installation of drywall and acoustical ceilings.

On or about February 26, 2007, plaintiff was working on the fifth floor of the job site, installing "abuse board" (a heavy duty sheetrock), when he slipped on a piece of sprinkler pipe, sustaining an injury to his back. Following a workers' compensation hearing, it was determined that plaintiff's injuries were causally related to the accident, and plaintiff began receiving benefits.

Thereafter, plaintiff and his wife commenced this action alleging violations of Labor Law §§ 200, 240 (1) and 241 (6). Defendants' violation of section 241 (6) was predicated on their violation of Industrial Code 12 NYCRR §§ 23-1.7 (e) (2) (protection from tripping and other hazards) and 23-1.30 (illumination). Defendants' answer contained general denials and affirmative defenses, including Capuano's own culpable conduct.

Plaintiff testified that on the date of the accident, he unloaded 10 sheets of abuse board from a transport cart and leaned them against a wall. As he began carrying the first board to its installation, he slipped on a piece of discarded sprinkler pipe between 12 to 18 inches long and 1 to 1¼ of an inch in diameter, "did a split," and injured his lower back. Plaintiff further testified that the room where the accident occurred was dark, with no exterior windows. At the time of the accident the temporary lighting that had been installed was not working, and plaintiff estimated that the nearest functioning lights were approximately 20 feet behind him.

Plaintiffs moved for partial summary judgment on the issue of defendants' Labor Law § 241 (6) liability. Defendants opposed, arguing that section 241 (6) did not impose absolute liability arising from the breach, but rather required a determination as to whether the safety measures employed were "reasonable and adequate" under the circumstances. Defendants contended that there was a material issue of fact as to whether the alleged violations of the regulations existed for a sufficient period of time to be discovered and remedied. Defend-

ants also questioned Capuano's testimony regarding the lighting in the room, the nature and extent of his injuries, and whether the injuries occurred as a result of this accident, noting that plaintiff did not report the accident until the next day, and did not seek treatment for his pain until over two months later.

The motion court granted plaintiffs' motion, finding that Capuano sufficiently stated a prima facie case of violations of the pertinent regulations and that the violations proximately caused Capuano's injuries. The court concluded that defendants had not raised an issue of fact, as they had presented no testimony or affidavits from individuals with personal knowledge of the accident, but merely tried to undermine Capuano's credibility with an unsworn medical report. The motion court also noted that there was no testimony contradicting plaintiff's statements that the area contained insufficient lighting or that there was piping present on the floor.

The motion court properly granted plaintiffs' motion for summary judgment as to liability on the Labor Law § 241 (6) claim. Labor Law § 241 (6) imposes a nondelegable duty upon owners and contractors to provide reasonable and adequate protection and safety to persons employed in, or lawfully frequenting, all areas in which construction, excavation, or demolition work is being performed (see e.g. Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]). To state a claim under section 241 (6), a plaintiff must identify a specific Industrial Code provision "mandating compliance with concrete specifications" (Ross, 81 NY2d at 505).

Here, plaintiffs met their burden of establishing liability under Labor Law § 241 (6) based upon the alleged violations of 12 NYCRR 23-1.7 (e) (2), which provides that working areas shall be kept free from the accumulation of dirt and debris and scattered tools and materials, and 12 NYCRR 23-1.30, which provides that "[i]llumination sufficient for safe working conditions shall be provided wherever persons are required to work or pass in construction . . . but in no case shall such illumination be less than 10 foot candles in any area where persons are required to [do] work."

Defendants have not demonstrated the existence of an issue of fact concerning inadequate lighting at the work site. Defendants argue that Capuano's claim that there was insufficient light in the room was not credible inasmuch as Capuano testified that he was able to take out his tool box, unload 10 abuse boards, and lean them against the wall. Defendants also contend that Capuano's testimony regarding the lighting in the area was inconsistent since Capuano testified that two days prior to the

accident there was no problem with lighting in the area, with sufficient natural light coming through the window to light up the entire area. In addition, defendants contend that Capuano offered only "vague" statements about the quality of lighting, which are "insufficient to create an inference that the amount of lighting fell below the specific statutory standard" (*Carty v Port Auth. of N.Y. & N.J.*, 32 AD3d 732, 733 [2006] [internal quotation marks omitted], *lv denied* 8 NY3d 814 [2007]). In addition, defendants posit that Capuano's statements that the nearest artificial light was 20 feet away, and his contention that the lighting was "bad," were insufficient to create an inference that the amount of light fell below the specific statutory amount of 10 foot candles. Taken together with plaintiff's statement that there was natural light coming through the windows during the daytime sufficient to light up the area, defendants argue that an issue of fact exists as to whether the lighting was sufficient.

Defendants' arguments are unavailing. In the first instance, defendants' characterization of plaintiff's testimony concerning the structure of the fifth floor work space is misleading. Defendants' summary of plaintiff's testimony is that the entire area was dark or not well lit, making it improbable that he was able to unload his tools, unload the abuse boards, and then suddenly get injured when he began working. However, this summary of plaintiff's testimony is inaccurate. Plaintiff made clear that he was working in stages, in two separate rooms on the fifth floor. First, he arrived, opened his tool box, and took out his tools. Next, plaintiff stated that he unloaded the board from the cart, and leaned them against the wall. Then, he began, piece by piece, to bring the abuse boards into the room where they were to be installed. Plaintiff stated that there was sufficient natural light in the area where he unloaded the boards, which was where the windows were located. However, there was insufficient light in the room where he brought the boards to be installed; that area had no windows to provide natural light and the artificial light was not working.

Nor is it persuasive that plaintiff apparently testified that two days before the accident, there was sufficient natural light in the room. On that day, plaintiff was present in the room at about one in the afternoon; on the day of the accident, he was there in the morning, between 7:30 and 8:00 a.m. Accordingly, it cannot be said that plaintiff's affidavit is self-serving or that it contradicts his deposition testimony. Plaintiff's affidavit simply provides additional details illuminating his prior deposition testimony. Apart from attempting to attack plaintiff's cred-

ibility, defendants have failed to proffer any evidence that would raise a question of fact as to the adequacy of the lighting. Concur—Gonzalez, Sweeny, and Renwick, JJ.

Saxe and Acosta, JJ. concur in a separate memorandum by Acosta J. as follows:

Acosta, J. (concurring). Although I agree with the majority's holding, I write separately because I think it is important for the parties and the bar that we address the specific arguments raised on appeal. Specifically, defendants' main argument on appeal is that *Calcano v Rodriguez* (91 AD3d 468 [2012]), which was decided after the motion court ruled on plaintiffs' motion for partial summary judgment, dictates a different result in defendants' favor. The issue, as raised by defendants on appeal, is whether a plaintiff has the burden to disprove an affirmative defense in order to make a prima facie showing of entitlement to summary judgment. I would hold that a plaintiff does not have that burden. Once a prima facie showing is made, the burden shifts to the defendant to raise issues of fact, such as by submitting evidence in support of an affirmative defense.

Initially, it should be noted that, contrary to defendants' assertions, there was no evidence in admissible form suggesting that plaintiff was negligent. Thus, *Calcano*, assuming that it was correctly decided, is inapposite to the facts of this case.

In the alternative, however, I would hold that *Calcano* was wrongly decided and therefore cannot support defendants' argument on appeal. In *Calcano*, a panel of this Court departed from our holding in *Tselebis v Ryder Truck Rental, Inc.* (72 AD3d 198 [2010]), where we held that a plaintiff may be entitled to summary judgment on the issue of liability, even if that plaintiff's own negligence is still an open question. In holding that a "plaintiff in a negligence action cannot obtain summary judgment as to liability if triable issues remain as to the plaintiff's own negligence and share of culpability for the accident" (91 AD3d at 468-469), *Calcano* cited to the Court of Appeals' holding in *Thoma v Ronai* (82 NY2d 736 [1993]). *Thoma*, however, does not support such a broad holding. Rather, in *Thoma*, the Court of Appeals held that plaintiff's concession that she did not observe the vehicle that struck her raised factual issues as to her reasonable care.

To be sure, the Court of Appeals held in *Thoma* that summary judgment on the issue of liability is unwarranted where there is a material issue of fact as to whether the plaintiff was negligent. However, nowhere in its decision did the Court say that a plaintiff has to disprove affirmative defenses in order to establish his or her entitlement to summary judgment. It simply

found that on the record before it, there was evidence of plaintiff's negligence.

Thus, I disagree with *Calcano* to the extent that it holds that *"Thoma* stands for the proposition that a plaintiff moving for summary judgment on the issue of liability in an action for negligence *must* eliminate any material issue, not only as to the defendant's negligence, but also as to whether the plaintiff's own comparative negligence contributed to the incident" (91 AD3d at 469 [emphasis added]).*

*Calcano*'s ruling not only creates confusion in this Department regarding a defendant's burden in asserting the affirmative defense of comparative negligence (*see e.g. Maniscalco v New York City Tr. Auth.*, 95 AD3d 510, 514 [2012, DeGrasse, J., dissenting in part]), but also fails to take into account the specific statutory mandate of CPLR 1412. CPLR 1412 unequivocally states that contributory negligence is an affirmative defense to be pleaded and proved by the defendant asserting it, and the plaintiff never has the burden to demonstrate that he or she is free from negligence once a defendant asserts the defense (*see also Boulos v State of New York*, 56 NY2d 714, 716 [1982, Fuchsberg, J., dissenting]). To require that a plaintiff demonstrate that he or she is free of comparative fault would render the statute meaningless and inconsistent with direct legislative guide (*see* 242 Siegel's Practice Review, *Conflict about Summary Judgment and Comparative Negligence is Resolved as First Department Adopts Second's Ruling* at 1 [Feb. 2012]).

I believe that my position is consistent with the Court of Appeals' decision in *Thoma*. And I decline to read into the Court of Appeals' decision something that is not there. *Calcano*'s unsigned memorandum decision departs from long-established case law and legislation mandating that the issue of plaintiff's negligence is for the defendant to plead and prove (*cf. Ortega v City of New York*, 95 AD3d 125, 129 n [2012]).

Members of this Court must endeavor to give our precedent full effect whenever possible. However, we are obligated for the benefit of litigants and the bar to engage in analysis of issues properly framed for the Court, especially the *Calcano* issue,

---

* Indeed, in *Thoma* it was the plaintiff's own concession that she did not observe the vehicle that struck her that created an issue of fact as to her reasonable care. Again, the Court did not place on the plaintiff the burden of demonstrating that she was free of comparable fault (82 NY2d at 737). Likewise, in *Calcano* the plaintiff testified at his deposition that he did not see the defendant's car prior to the accident. As such, a question of fact was raised regarding whether the plaintiff was negligent in failing to observe what should have been observed (91 AD3d at 472).

which has resulted in discrepant decisions in this Department, with concomitant confusion to the bar.

